UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| EDWARD H. HAMPTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-cv-00291-JMS-DKL |
| ) | |
| KEVIN GILMORE Asst. Super., ) | |
| GATLIN FERRO Aramark Food Supervisor, ) | |
| LOIS CARDINAL L Dorm CC4 Counselor, ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motions for Summary Judgment**

Plaintiff Edward Hampton brings this action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at the Wabash Valley Correctional Facility ("Wabash Valley"). Hampton alleges that the defendants retaliated against him in violation of his First Amendment and due process rights. Hampton moves for summary judgment on his claims and the defendants have filed cross motions.[1] For the following reasons, Hampton's motion for summary judgment [dkt 50] is **denied** and the defendants' motions for summary judgment are **granted**.

**I. Statement of Facts**

Hampton's motion for summary judgment and the cross-motions relate to his claim that his removal from his prison job was the product of retaliation against him for filing lawsuits. The

---

[1] Because Hampton had been released at the time that the defendants filed their cross-motions for summary judgment, they were directed to re-serve Hampton with their motions. The defendants complied with the Court's direction, but also noted that they had already served Mr. Hampton at his new address. Mr. Hampton had therefore had 2 opportunities to respond to those motions, but has failed to do so, and the motions are now fully briefed.

following statement of facts, therefore, is considered to be true for purposes of Hampton's motion and the defendants' cross-motions for summary judgment.

Hampton filed the complaint for cause number 2:15-cv-00135 against Wabash Valley Superintendent Bruce Lemmon and Unit Team Manager Kevin Hunter on May 14, 2015. Hampton started working in the production kitchen at Wabash Valley on June 25, 2015.[2] Hampton's tasks included washing pots and pans, unloading trucks, washing cart trucks, and working on the D-Line to make food trays. During this time, defendant Gatlin Ferro was an employee of Aramark Correctional Services, LLC, ("Aramark") working as the food services director in the food production kitchen at Wabash Valley. While Aramark provides food services to the prison, the inmates are not employees of Aramark. They are assigned to work in the kitchen areas by the Indiana Department of Correction ("IDOC") and Aramark works with the IDOC once this assignment is made.

While working in the production kitchen, Hampton was observed engaging in several activities that were below expectations. These activities included sleeping while he was supposed to be working, not wearing a beard guard, and generally not working. Because of Hampton's poor performance while working in the production kitchen, Ferro made a reclassification request. The classification request was made to the IDOC using State Form 3380R. [Dkt. 64-4.] This evaluation reported that Hampton required too much supervision, failed to show initiative, exhibited a negative influence on others, and that his disinterest in the position help up the production line.

---

[2] Hampton asserts that defendant Gatilin Ferro denied in his response to Hampton requests for admission that Hampton worked in the production kitchen. But it is clear from the record that Hampton did work in the kitchen and that his removal from this job that is the subject of this lawsuit.

2

Ferro cannot reclassify an inmate out of the kitchen on his own, but was required to make a request for reclassification. The reclassification request is then either accepted or rejected.

Hampton never had any contact with Ferro and never spoke to him prior to the reclassification request, other than saying hello or receiving instructions on what to do at work. He never had any altercations or complications with Ferro until the day he was removed from his job. When Ferro made the reclassification request, he had no knowledge of any lawsuits Hampton had filed. He had never discussed any other lawsuits Hampton had filed with anyone, including Hampton.

On July 22, 2015, Wabash Valley Case Worker Lori Cardinal submitted the form "Report of Classification Hearing" to Jennifer Davis, a Classification Case Worker at Wabash Valley. The report stated that, due to the work evaluation completed by Ferro, Cardinal recommended Hampton be re-classified out of his position and into Idle No Pay or "INP" status. Jennifer Davis approved the reclassification decision on July 23, 2015. As a result, Hampton was transferred to another dormitory in general population and placed on Idle No Pay status for 90 days. Idle No Pay meant that Hampton was not eligible for another job until the 90 days had lapsed

On July 22, 2015, Cardinal informed Hampton that he could appeal the decision. Hampton requested to keep his job until her recommendation was ruled upon and the appeal decided, but Cardinal denied this request. Hampton informed Cardinal that he believed the decision violated his rights because he had not been granted the opportunity to challenge the decision through an adversarial hearing. Hampton's only conversation about his prior litigation with Cardinal was when he first began his job, when she stated that she had heard that he had filed lawsuits. He had no other conversation with Cardinal about his prior lawsuit.

3

On July 24, 2015, Hampton completed and submitted a classification appeal challenging his removal from his job. The appeal was delivered to Wabash Valley Assistant Superintendent Kevin Gilmore, whose job it is to review and decide classification appeals. Gilmore determined that there was no reason to reverse the classification decision and denied the classification appeal on July 29, 2015. Hampton's only other communication with Gilmore was to request in writing that his 90-day placement on Idle No Pay be waived or vacated. Hampton learned this request had been denied secondhand through a counselor. This news led Hampton to believe that the decision to remove him must be the product of retaliation for his prior lawsuits.[3] He has also testified that this reclassification was the product of "either retaliation or incompetence." Hampton believes that Gilmore has knowledge of the earlier suit by virtue of his position at Wabash Valley.

Hampton's removal from his job did not result in the loss of any earned good time credit, nor did it otherwise cause an extension of his sentence.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light

---

[3] Hampton asserts that defendants Gilmore and Cardinal "lied" in their responses to his requests for admissions to them when they stated that he was transferred prior to the completion of the 90 days. But the length of time that Hampton spent in Idle No Pay status is not a material fact to the issues before the Court. .

4

most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001). Even though the parties have filed cross motions for summary judgment, the general standards for summary judgment do not change: with "cross summary judgment motions, we construe all facts and inferences therefrom 'in favor of the party against whom the motion under consideration is made.'" *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)).

### III. Discussion

Hampton argues that he is entitled to summary judgment because the defendants violated his due process rights when they removed him from his prison job and that the defendants removed him from his prison job in retaliation for filing lawsuits. The defendants respond and move for summary judgment arguing that there is no cognizable procedural due process claim based on the asserted entitlement to a prison job and that they did not retaliate against Hampton in violation of the First Amendment.

A. *Due Process*

Hampton argues that his procedural due process rights were violated because his removal from his prison job amounted to disciplinary sanctions against him without a finding that he

violated facility rules. The defendants point out that such a claim was not allowed to proceed in the Court's screening order of December 10, 2015, (Dkt. 16) and further argue that such a claim is not viable because Hampton has no protected liberty interest in maintaining a prison job. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). Because Hampton does not have a liberty or property interest in maintaining a prison job, he has no viable claim that the removal from his job violated his due process rights. *Id.*

Similarly, to the extent Hampton's claim can be understood to be based on his transfer to a different dormitory within in the prison, he still has not stated a due process claim. In the context of a prison transfer, a liberty interest entitling a prisoner to the protections of due process exists only if the transfer resulted in the imposition of atypical and significant hardships on the inmate. *Sandin v. Conner*, 515 U.S. 472, 483 (1995). "In the absence of such 'atypical and significant' deprivations, the procedural protections of the Due Process Clause will not be triggered." *Lekas v. Briley,* 405 F.3d 602, 608 (7th Cir. 2005). Hampton has not alleged or provided evidence of any difference in the conditions in the dormitory to which he was transferred, or any "atypical and significant" deprivations in that dormitory.

In short, when he was removed from his prison job, Hampton was entitled to no procedural protections and therefore cannot state a claim that his procedural due process rights were violated. Therefore, to the extent he asserted a due process claim, his motion for summary judgment on this claim must be denied and the defendants' motion for summary judgment must be granted.

B. *Retaliation*

Hampton next argues that the defendants retaliated against him for filing lawsuits when they removed him from his prison job. The defendants respond arguing that Hampton has presented no undisputed facts to show that the removal from his job was the product of retaliation against him. The defendants further argue that they are entitled to summary judgment on Hampton's retaliation claim.

To prevail on a First Amendment retaliation claim, Hampton "must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The parties appear to agree that the first two elements of a retaliation claim are satisfied here. First, Hampton alleges that he was retaliated against for filing lawsuits, an activity that is protected by the First Amendment. Second, Hampton was fired from his prison job, a deprivation that the defendants do not dispute here would likely deter future First Amendment activity. The parties dispute, however, whether Hampton can establish the third element of his retaliation claim – that his filing of lawsuits was "at least a motivating factor" in the removal from his prison job.

In support of his motion for summary judgment, Hampton focuses on his argument that the removal from his prison job amounted to a disciplinary action against him in violation of his due process rights. As previously discussed, Hampton has not stated a viable due process claim. This allegation also provides no support for a conclusion that the defendants' actions were motivated

7

by Hampton's previous filing of lawsuits. Hampton therefore has not shown that he is entitled to judgment as a matter of law on his claims.

The defendants each argue that they are entitled to summary judgment on Hampton's claims because the undisputed facts show that Hampton's filing of a lawsuit was not a motivating factor in the decision to remove him from his job. First, Ferro points out that he did not know about Hampton's lawsuit and argues that without knowledge of the lawsuit, he could not have retaliated against Hampton because of it. Because it is undisputed that Ferro did not know about the lawsuit, he necessarily could not have acted because of the lawsuit. Ferro is therefore entitled to summary judgment on Hampton's retaliation claim.

Next, defendants Gilmore and Cardinal argue that they are entitled to summary judgment because Hampton has presented no competent evidence that Hampton's filing of a lawsuit was a motivating factor for their actions. Further, the defendants point out that the records associated with Hampton's removal from his job all cite a poor work evaluation by Ferro as the reason for the removal from the job. In addition, Hampton himself stated that he believes that Gilmore and Cardinal's motivation "was either retaliation or incompetence." Hampton's speculation on this point is insufficient to support a conclusion that the defendants' actions were taken for retaliatory purposes. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (plaintiff's speculation regarding the officers' motives cannot overcome the contrary evidence actions were benign). In sum, there is no competent evidence that the defendants removed Hampton from his prison job for retaliatory purposes and they are therefore entitled to summary judgment.

8

## IV. Conclusion

For the foregoing reasons, plaintiff Edward Hampton's motion for summary judgment [dkt 50] is **denied** and the motions for summary judgment filed by defendant Ferro [dkt 68] and defendants Gilmore and Cardinal [dkt 63] are each **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 2/27/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

EDWARD M. HAMPTON
417 S. Calhoun St.
Fort Wayne, IN 46802

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Bryan Keith Perkins, Jr.
HUME SMITH GEDDES GREEN & SIMMONS
bperkins@humesmith.com

William Hackl Brainard
INDIANA ATTORNEY GENERAL
william.brainard@atg.in.gov

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov